# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.:

SANDIPKUMAR PATEL and SONAL PATEL,

      Plaintiffs,

v.

WILLIAM SNYDER, as SHERIFF OF MARTIN COUNTY, FLORIDA,
MICHAEL FENTON, individually, and, DAVID HAYSLIP, individually

      Defendants.

_____/

## **COMPLAINT**

1)     This a civil action seeking money damages in excess of $5,000,000.00 (Five Million Dollars), exclusive of costs, interest, and attorney's fees, against WILLIAM SNYDER, as SHERIFF OF MARTIN COUNTY, MICHAEL FENTON, individually, and, DAVID HAYSLIP, individually.

2)     This action is brought pursuant to 42 U.S.C. §1983 and §1988, and the Fourth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. §1983, 28 U.S.C. §1331, and 28 U.S.C. §1343. PLAINTIFFS further invoke the supplemental jurisdiction of the United States District Court to hear pendant state tort claims arising under state law, pursuant to 28 U.S.C. §1367(a).

3)     PLAINTIFFS SANDIPKUMAR PATEL ("SAM") and SONAL PATEL ("SONAL") presented their claims in writing to DEFENDANT SHERIFF by means of notices of claim of demand for damages pursuant to the provisions of Florida Statute §768.28 within three (3) years of the accrual of cause of action.

1

4)       DEFENDANT SHERIFF never made final disposition of the written claims of PLAINTIFFS within six (6) months of their presentation.

## **PARTIES**

5)       PLAINTIFF SANDIPKUMAR PATEL [hereinafter PLAINTIFF SAM] is a resident of Martin County, State of Florida.

6)       PLAINTIFF SONAL PATEL [hereinafter PLAINTIFF SONAL] is a resident of Martin County, State of Florida.

7)       At all times material, PLAINTIFFS SAM and SONAL were husband and wife.

8)       DEFENDANT WILLIAM SNYDER, as SHERIFF of MARTIN COUNTY, Florida, is the Sheriff of MARTIN County, Florida [hereinafter DEFENDANT SHERIFF], as organized and existing under the Constitution and laws of the State of Florida.

9)       At all times referred to herein, DEFENDANT MICHAEL FENTON [hereinafter DEFENDANT FENTON] was acting under color of law as a deputy sheriff for WILLIAM SNYDER, as SHERIFF of MARTIN COUNTY, Florida, and in such capacity, as an agent, servant, and employee of WILLIAM SNYDER, as SHERIFF of MARTIN COUNTY, Florida.

10)      At all times referred to herein, DEFENDANT DAVID HAYSLIP [hereinafter DEFENDANT HAYSLIP] was acting under color of law as a deputy sheriff for WILLIAM SNYDER, as SHERIFF of MARTIN COUNTY, Florida, and in such capacity, as an agent, servant, and employee of WILLIAM SNYDER, as SHERIFF of MARTIN COUNTY, Florida.

11)      At all times referred to herein, Deputy Parker was acting under color of law as a deputy sheriff for WILLIAM SNYDER, as SHERIFF of MARTIN COUNTY, Florida, and in such

2

capacity, as an agent, servant, and employee of WILLIAM SNYDER, as SHERIFF of MARTIN

COUNTY, Florida. Deputy Parker is not being sued in this case.

12)     In this cause, DEFENDANT WILLIAM SNYDER, as SHERIFF of MARTIN

COUNTY, Florida, acted through his agents, employees, and servants, including Parker, and

DEFENDANTS FENTON and HAYSLIP.  DEFENDANT SNYDER in his official capacity will

also be referred to as the Sheriff's Office.

13)     PLAINTIFFS sue DEFENDANTS FENTON and HAYSLIP in their individual

capacities.

14)      All actions in this case occurred in Martin County, Florida.

## FACTS

15)     Commencing at a date before November 19, 2019, the Martin County Sheriff's Office conducted an investigation of allegations of prostitution and human trafficking occurring at the Florida Therapy Spa [hereinafter "SPA"] located in Martin County. In the course of the investigation numerous cameras were secretly placed by the Sheriff's Office within the business. The cameras broadcasted live and were connected to a recording system. At all times the recording system was fully operational.

16)     On or about November 19, 2019, Martin County deputies FENTON and HAYSLIP were conducting surveillance at the shopping plaza where the SPA was located. They observed a male [hereinafter "MALE"] entering the business. After this MALE entered the business, he was observed via the cameras engaging in a monetary transaction in the lobby with a female. In the course of the transaction the MALE provided currency to that person. That female took the MALE to a room.

17)     The MALE was observed undressing. He laid down on the massage table. A different female, the masseuse, entered the room and massaged the white MALE. As part of this massage, the masseuse masturbated the MALE to orgasm. The white MALE cleansed himself and left. Everything with regard to this MALE which occurred within the business was video recorded by the surveillance cameras.

18)     FENTON and HAYSLIP observed the MALE exit the SPA and saw him enter a blue four door Porsche with license tag JPA I53.The MALE then drove the Porsche from the shopping plaza. The deputies had a significant amount of time, over one hour, to observe the MALE both

4

inside and outside the SPA. They possessed the video recordings which they could review anytime to view the images of the MALE.

19)     In an effort to accurately identify the MALE, the Florida Driver and Vehicle Information Database (DAVID) was utilized. DAVID is a multifaceted database that affords immediate retrieval of driver and motor vehicle information that is indispensable for law enforcement and criminal justice officials. It allows law enforcement to identify the owners of vehicles as well as identify the registered owner of a license tag and the vehicle to which it is assigned. It also permits law enforcement to obtain copies of a license holder's driver license photograph and driving record. The DAVID database is managed by the Florida Department of Highway Safety and Motor Vehicles.

20)     FCIC is a computerized index of criminal justice information (*i.e.*- criminal record history information, fugitives, stolen properties, missing persons). It is available to federal, state, and local law enforcement and other criminal justice agencies and is operational 24 hours a day, 365 days a year. The FCIC system is to provide a computerized database for ready access by a criminal justice agency making an inquiry and for prompt disclosure of information in the system from other criminal justice agencies about crimes and criminals. This information assists authorized agencies in criminal justice and related law enforcement objectives. The FCIC database is managed by the Florida Department of Law Enforcement. The Martin County Sheriff's Office is an authorized agency.

21)     Both systems have safeguards which require a user who accesses the systems to log in and use an assigned user name and password. Each user and assigned password is unique and only provided to the user by the particular system. Users are instructed to not provide nor disclose their user name and password to anyone. The users are also instructed to not allow anyone the ability to

obtain the user name and password. The systems time out should the user leave the access computer without logging off. The users are instructed that if the user name and password are compromised, they are told to immediately notify the system. The systems maintain records of all inquiries which include the identity of the user, the IP address of the accessing computer and, the date and time of the inquiry. Any reference to a person using the system is based on the fact that his unique username and password were utilized to gain access to the system.

22)     When FENTON and HAYSLIP left the surveillance location on November 19, 2018, they went to their office. After they arrived at their office, FENTON, the lead investigator, utilized the DAVID system and the FCIC system. As a result of his use of the systems, FENTON obtained records of the identity of the owner of the Porsche, the identities of registrants of the Porsche, and driver license records.

23)     Despite the fact that FENTON, nor any member of the Sheriff's Office nor anyone else had any evidence or information that SAM was involved in any activities regarding the SPA, FENTON used the DAVID system to obtain a driver license photograph of SAM. On or about that date, FENTON shared the photograph with HAYSLIP

24)     Additionally, on or about November 28, 2018, HAYSLIP also accessed those systems and obtained additional records including information about the registrants. He also obtained records regarding SAM, based solely because of the actions of FENTON, and despite that there was still no information nor evidence that SAM had any involvement.

25)     FENTON prepared a police report [hereinafter "REPORT"] detailing the criminal activity that occurred by the MALE inside the SPA, that he was video recorded at all times when he was in the SPA which was almost an hour, and that they observed him when entering the SPA and

6

when exiting the SPA and driving away in the blue Porsche. Fenton also included the alphanumeric numbers of the license tag of the Porsche.

26)     According to the REPORT written by FENTON, FENTON claimed it was HAYSLIP who researched the Porsche which the MALE drove and obtained the photograph of SAM. However, the DAVID and FCIC records clearly establish that it was FENTON, not HAYSLIP, who conducted all research regarding the Porsche and registrants on November 19, 2018, and obtained the photograph of SAM.

27)     In the REPORT, FENTON wrote "Using several DAVID searches Detective Hayslip was able to identify the MALE entering the Porsche and in [the] room [in the SPA] as Sandipkumar K. Patel DOB: 10/03/1971." Several is defined as more than two, but less than many.

28)     The Porsche was registered to a woman with the last name Patel and co-registered to a man, not named Patel, who will be referred to as JOHN DOE [hereinafter "JOHN DOE"] for confidentiality reasons. According to the SHERIFF, FENTON and HAYSLIP claimed they observed the photograph of JOHN DOE obtained from the DAVID system and determined that the co-registrant DOE was not the MALE who had been in the SPA.

29)     According to the SHERIFF, FENTON and HAYSLIP researched the woman with the last name Patel and speculated that the MALE was her spouse. FENTON and HAYSLIP claimed they used the DAVID system and looked at several photos of men named Patel residing in Martin County. Upon seeing the photograph of SAM, they decided that his photograph "seemed identical" to the MALE seen in the surveillance video.

30)     However, DAVID and FCIC records establish that FENTON and HAYSLIP did not look at several photographs and that they focused on the photograph of SAM within minutes of ascertaining that a woman with the last name of Patel was the co-registrant of the Porsche.

31)     FENTON and HAYSLIP failed to conduct a proper investigation for many reasons including:

1.     FENTON and HAYSLIP assumed that the MALE had to be the husband of co-registrant Patel, and accordingly, the MALE had to have the last name Patel.

2.     Contrary to the assertion of FENTON, FENTON and HAYSLIP did not look at several photos of males who had their driver license addresses in Martin County on DAVID when they selected the photograph of SAM. FENTON and HAYSLIP chose the photograph of SAM as the MALE within minutes of commencing their use of the DAVID and FCIC systems on November 19, 2018.

3.     FENTON and HAYSLIP identified SAM as the MALE who was in the SPA and the blue Porsche because SAM's driver license photograph "seemed identical" to the man in the surveillance video. At no time did FENTON and HAYSLIP make a positive identification of SAM as the MALE.

4.     FENTON and HAYSLIP did not consider that Patel is the most common Indian name like Smith is the most common American name. There are hundreds of males named Patel who have Martin County addresses on their driver licenses.

5.     FENTON and HAYSLIP did not consider that the MALE could have an address on his driver license outside Martin County.

6.     The MALE is white. SAM is Indian of Asian ethnicity with dark skin. He is clearly not white. Despite this, FENTON wrote on the REPORT that SAM is white because the MALE is white.

7.     FENTON and HAYSLIP failed to conduct an independent comprehensive investigation to determine whether SAM was the same person they saw at the SPA including an in-person view and whether there was any association between SAM and the woman named Patel. This is especially important because of FENTON's description of SAM as white.

8.     FENTON and HAYSLIP had the ability and sufficient time to go to the location where SAM worked or lived to observe him and to determine in person if he was the MALE but failed to do so.

32)     On February 8, 2019, after substantial time had passed since November 19, 2018, FENTON swore under oath, under penalty of perjury, that the REPORT was true.

33)     On February 11, 2019, the REPORT was submitted to a judge as the affidavit in support of the issuance of an arrest warrant for SAM. Based upon that affidavit/REPORT, the judge issued an arrest warrant for SAM for the crimes of Soliciting Prostitution, in violation of section 796.07(2)(f), and Use of a Structure or Conveyance for Prostitution, in violation of section 796.07(2)(g).

34)     After the warrant was issued, FENTON attached a document listing the pedigree information of SAM and attaching to it a copy of the photograph he obtained from DAVID.

35)     On or about February 25, 2019, Martin County Sheriff Deputy Parker was assigned to arrest SAM on the arrest warrant. On or about that date, Parker went to the marital residence of SAM and SONAL where he encountered SONAL.

36)     Parker identified himself to SONAL as a law enforcement officer and that he was there to arrest SAM for the crimes of Soliciting Prostitution and Use of a Structure or Conveyance for Prostitution. Parker also told SONAL that he had a photograph of SAM and there was a video of SAM engaged in acts with a prostitute. Parker told SONAL that SAM had been driving a blue Porsche whereupon she told Parker that they never owned a Porsche.

37)     SONAL told Parker that SAM was not home and obtained Parker's business card. SONAL told Parker she would inform SAM to contact Parker.

38)     As a result of being told by a law enforcement officer that her husband had been involved with a prostitute and was going to be arrested, SONAL suffered severe emotional distress and trauma. She also suffered severe emotional distress and trauma over the grave concerns that she had been infected with sexually transmitted diseases. SONAL's severe emotional distress and trauma was further magnified because SONAL and SAM'S children were present and heard the police officer state he wanted to arrest their father for being with a prostitute.

39)     On February 25, 2019, SAM turned himself into Parker whereupon he was arrested and booked into the Martin County Jail where he was photographed and fingerprinted. Thereafter, he posted bail in the amount of $1,500.00 and was released from custody.

40)     After his release from jail, SAM retained the services of the Law Offices of David Golden, P.A., to represent him to fight the false criminal charges. SAM paid a fee for representation.

41)     On February 19, 2019, prior to SAM's arrest, the SHERIFF conducted a press conference where the SHERIFF announced the investigation of two spas including the SPA and the arrest of several woman who ran the spas for Racketeering Influenced and Corrupt Organizations Act (RICO) violations.

42)     The SHERIFF also displayed three poster boards with photographs of over 100 men who he stated would be arrested for the identical charges as SAM because they were men who received prostitution services at the spas. Included on the posters was the driver license photograph of SAM which was the photograph FENTON obtained from DAVID.

43)     In this press conference, the SHERIFF characterized all the men, including SAM as "monsters." The SHERIFF accused the men of facilitating the crime of human trafficking of the women who were the masseuses at the spas. The SHERIFF had no evidence to support those accusations.

44)     In advance of the press conference, the SHERIFF provided the media with photographs of the men on the poster including the photograph of SAM and also provided the media with copies of the police report of all the men including the Affidavit/REPORT of SAM. As a result of the press conference, and the media's receipt of the photographs and arrest reports, the media published the photograph of SAM and the allegations against SAM. The publication by the media was broadcast around the world. The media also reported the press conferences in print which was distributed globally. The SHERIFF knew that the broadcast and the print media would be published on the world wide web (internet) even to the villages and locations in India where SAM grew up and had friends and family.

45)     Over the next several days, the SHERIFF continued to have press conferences of the same nature, displaying the same posters and photographs. The SHERIFF repeated the same unfounded accusations about the men. The media again broadcasted the press conferences around the world and also reported the press conferences in print which was distributed globally. As before, the SHERIFF knew that the broadcast and the print media would be published on the world wide web (internet) even to the villages and locations in India where SAM grew up and had friends and family.

46)     On or about March 1, 2019, the Sheriff's Office acknowledged that SAM was innocent and he had been misidentified as the MALE. The SHERIFF admitted that the work done by FENTON and HAYSLIP was shoddy as FENTON and HAYSLIP only identified SAM as the MALE because the photograph of SAM "seemed identical" to the MALE on the surveillance video and because the last name of SAM is Patel.

47)     PLAINTIFF SAM has never been convicted by any prosecuting authority of any criminal offense as a result of his arrest in this matter. On March 1, 2019, the State Attorney dismissed all charges against SAM.

48)      The SHERIFF, FENTON and HAYSLIP knew of the shoddy identification by the time of SAM's arrest on February 25, 2019, but failed to commence any material review of the identification until February 27, 2019.

49)     While the SHERIFF had numerous press conferences where he condemned SAM and accused him of heinous and atrocious conduct, the SHERIFF intentionally failed to have a press conference where he would exonerate SAM so that the media could publish SAM's innocence in the same manner and way the SHERIFF used to condemn SAM. Nor did the SHERIFF issue any press

release announcing the vindication and innocence of SAM. SAM's reputation remains tainted because of the SHERIFF's lack of moral responsibility to endeavor to erase his mistake of arresting SAM and by telling the world that SAM is not a criminal and evil man.

50)     At all times material hereto, the conduct of each of the individual DEFENDANTS occurred under color of state law.

51)     No founded suspicion, reasonable suspicion, or probable cause existed for the detention and arrest of PLAINTIFF SAM for any offense.

52)     SAM's good name and reputation were permanently damaged as a result of all these actions and occurrences. Additionally, SAM was ridiculed and ostracized by neighbors, friends, associates, acquaintances, customers and others as a result of all these actions and occurrences.

## CAUSES OF ACTION

## COUNT 1

## FALSE ARREST/FALSE IMPRISONMENT CLAIM BY PLAINTIFF SAM AGAINST DEFENDANT SHERIFF

For his cause of action against DEFENDANT SHERIFF in Count 1, PLAINTIFF SAM states:

53)      PLAINTIFF SAM realleges and adopts, as if fully set forth in Count 1 the allegations of paragraphs 1 through 52.

54)      DEFENDANTS FENTON and HAYSLIP proximately caused PLAINTIFF SAM's arrest in the absence of probable cause that PLAINTIFF SAM committed any criminal offense.

55)      The actions of DEFENDANTS FENTON and HAYSLIP in causing the arrest of PLAINTIFF SAM's in the absence of probable cause, were taken in the absence of lawful authority. The actions of DEFENDANTS FENTON and HAYSLIP constitute false arrest/false imprisonment of PLAINTIFF SAM's under Florida law.

56)      The false arrest/false imprisonment of PLAINTIFF SAM was committed by DEFENDANTS FENTON and HAYSLIP in the course and scope of their employment as deputy sheriffs for DEFENDANT SHERIFF.

57)       As a direct and proximate result, PLAINTIFF SAM has further suffered physical injury and loss of his freedom. He suffered loss of his liberty and freedom, mental anguish, loss of income, attorney expenses, costs of bond and defense, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.

14

WHEREFORE, PLAINTIFF SAM prays:

a)      Judgment for compensatory damages in excess of  $5,000,000.00 (Five Million Dollars);

b)      Cost of suit;

c)      Trial by jury as to all issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 2

## FALSE ARREST/FALSE IMPRISONMENT CLAIM OF PLAINTIFF SAM AGAINST DEFENDANTS FENTON and HAYSLIP, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against DEFENDANTS FENTON and HAYSLIP individually, in Count 2, PLAINTIFF SAM states:

58)      PLAINTIFF SAM realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1 through 52.

59)      DEFENDANTS FENTON and HAYSLIP proximately caused PLAINTIFF SAM's arrest in the absence of probable cause that PLAINTIFF SAM committed any criminal offense.

60)      As a direct and proximate result, PLAINTIFF SAM, has further suffered physical injury and loss of his freedom. He suffered loss of his liberty and freedom, mental anguish, loss of income, attorney expenses, costs of bond and defense, and loss of capacity for the enjoyment of life. He suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of his physical and mental condition and suffered a damaged reputation.. PLAINTIFF SAM has also agreed to pay the undersigned a reasonable fee for his services, herein.

15

61)      These actions were in violation of PLAINTIFF SAM's civil rights and the Fourth

Amendment to the Constitution. The claims in this count are cognizable under 42 U.S.C. §1983.

WHEREFORE, PLAINTIFF SAM prays with regard to FENTON and HAYSLIP:

a)      Judgment for compensatory damages in excess of  $5,000,000.00 (Five

Million Dollars);

b)      Judgment for punitive damages;

c)      Cost of suit;

d)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e)      Trial by jury as to all issues so triable; and

f)      Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 3

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OF PLAINTIFF SONAL AGAINST DEFENDANT SHERIFF

For her cause of action against DEFENDANT SHERIFF in Count 3, PLAINTIFF SONAL states:

62)      PLAINTIFF SONAL realleges and adopts, as if fully set forth in Count 3, the

allegations of paragraphs 1 through 52.

63)      As a result of the actions by Deputy Parker, PLAINTIFF SONAL suffered severe

emotional distress and psychological trauma.

64)      The SHERIFF knew or should have known that the press conferences would result

in its global publication in all manner of media and that, as a proximate and direct result of that

publication, many people including friends and family of SONAL and SAM, would contact her

causing her extreme embarrassment. In addition, those people who contacted her would, among other

things, ostracize and condemn SONAL and SAM and assume that the SHERIFF was correct in his statements about SAM. This also caused SONAL to suffer severe emotional distress and psychological trauma.

65)      As a result of the many press conferences of the SHERIFF where he claimed SAM used the service of a prostitute, characterized SAM as a "monster" and accused SAM of facilitating the crime of human trafficking of the women who were the masseuses at the spas, PLAINTIFF SONAL suffered severe emotional distress and psychological trauma. The severe emotional distress and psychological trauma was magnified because the falsehoods by the SHERIFF reached all the way to the areas in India where she and SAM grew up and had family and friends. SONAL and SAM learned that they cannot travel home because they will be shunned despite the dismissal of the charges against SAM.

66)      The failure of the SHERIFF to conduct a press conference or issue a press release announcing SAM's innocence and vindication exasperated the severe emotional distress and psychological trauma of SONAL.

67)      The psychological trauma and emotional distress caused PLAINTIFF SONAL to suffer from severe depression and post-traumatic stress disorder.

68)      As a direct and proximate result, PLAINTIFF SONAL suffered mental anguish, severe emotional distress and psychological trauma.

WHEREFORE, PLAINTIFF SONAL prays with regard to the SHERIFF:

a)      Judgment for compensatory damages in excess of $5,000,000.00 (Five Million Dollars);

b)      Cost of suit;

c)      Trial by jury as to issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 4

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OF PLAINTIFF SAM AGAINST DEFENDANT SHERIFF

For his cause of action against DEFENDANT SHERIFF, in Count 4, PLAINTIFF SAM states:

69)     PLAINTIFF SAM realleges and adopts, as if fully set forth in Count 4 the allegations of paragraphs 1 through 52.

70)     As a result of the actions of or about November 19, 2019, including being body searched, PLAINTIFF SAM suffered emotional distress and psychological trauma.

71)     The SHERIFF knew or should have known that the press conferences would result in its global publication in all manner of media and that, as a proximate and direct result of that publication, many people including friends and family of SONAL and SAM, would contact him causing him extreme embarrassment. In addition, those people who contacted him would, among other things, ostracize and condemn SONAL and SAM and assume that the SHERIFF was correct in his statements about SAM. This also caused SAM to suffer severe emotional distress and psychological trauma.

72)     As a result of the many press conferences of the SHERIFF where he claimed SAM used the service of a prostitute, characterized SAM as a "monster" and accused SAM of facilitating the crime of human trafficking of the women who were the masseuses at the spas, PLAINTIFF SAM suffered severe emotional distress and psychological trauma. The severe emotional distress and psychological trauma was magnified because the falsehoods by the SHERIFF reached all the way to the areas in India where he and SONAL had family and friends. SONAL and SAM learned that they cannot travel home because they will be shunned despite the dismissal of the charges against SAM.

73)     The failure of the SHERIFF to conduct a press conference or issue a press release announcing SAM's innocence and vindication exasperated the severe emotional distress and psychological trauma of SAM.

74)     The psychological trauma and emotional distress caused PLAINTIFF SAM to suffer from severe depression and post-traumatic stress disorder.

75)     As a direct and proximate result, PLAINTIFF SAM suffered mental anguish, severe emotional distress and psychological trauma.

WHEREFORE, PLAINTIFF SAM prays with regard to the SHERIFF:

a)     Judgment for compensatory damages in excess of  $5,000,000.00 (Five Million Dollars);

b)     Cost of suit;

c)     Trial by jury as to issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 5**

## DERIVATIVE CLAIM OF SAM- ALL DEFENDANTS

For his cause of action against DEFENDANTS SHERIFF, FENTON, individually, and HAYSLIP, individually, in Count 5, PLAINTIFF SAM states:

76)     PLAINTIFF SAM realleges and adopts, as if fully set forth in Count 5, the allegations of paragraphs 1 through 52.

77)     As a direct and proximate result of the actions of all of the DEFENDANTS as above alleged, PLAINTIFF SAM has suffered and will continue to suffer the loss of his wife's services, support, consortium, and the comfort and the care of her society.

WHEREFORE, PLAINTIFF SAM prays

a)     Judgment for compensatory damages in excess of $5,000,000.00 (Five Million Dollars) against all DEFENDANTS;

b)     Judgment for punitive damages against DEFENDANTS FENTON and HAYSLIP;

c)     Costs of suit;

d)     Trial by jury as to all issues so triable; and

e)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 6

## DERIVATIVE CLAIM OF SONAL - ALL DEFENDANTS

For his cause of action against DEFENDANTS SHERIFF, FENTON, individually, and HAYSLIP, individually, in Count 6, PLAINTIFF SONAL states:

78)     PLAINTIFF SONAL realleges and adopts, as if fully set forth in Count 6, the allegations of paragraphs 1 through 52.

79)     As a direct and proximate result of the actions of all of the DEFENDANTS as above alleged, PLAINTIFF SONAL has suffered and will continue to suffer the loss of her husband's services, support, consortium, and the comfort and the care of his society.

WHEREFORE, PLAINTIFF SONAL prays

a)     Judgment for compensatory damages in excess of $5,000,000.00 (Five Million Dollars) against all DEFENDANTS;

b)     Judgment for punitive damages against DEFENDANTS FENTON and HAYSLIP;

c)     Costs of suit;

d)     Trial by jury as to all issues so triable; and

e)     Such other relief as this Honorable Court may deem just and appropriate.

**GARY KOLLIN, P.A.**
Counsel for PLAINTIFFS
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:     (954) 723-9999
Fax:               (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

By: **/s/ Gary Kollin, Esq.**
Florida Bar No. 282431

**THE LAW OFFICES OF DAVID GOLDEN, P.A.**
Counsel for PLAINTIFFS
903 S.E. Central Parkway
Stuart, FL 34994
Telephone:     (772) 220-4400
Fax:               (772) 220-1011
info@myfavoritelawfirm.com

By: **/s/ David Golden, Esq**.
Florida Bar No. 607010

By: **/s/ Adam M. Guzi, Esq.**
Florida Bar No. 800171